ROY E. ELLSWORTH, JR.,

                No. 08-10344

        Plaintiff,           District Judge David M. Lawson

v.                       Magistrate Judge R. Steven Whalen

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Roy E. Ellsworth brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits under the Social Security Act. Parties have filed cross motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's motion be GRANTED and Plaintiff's motion DENIED.

## <u>PROCEDURAL HISTORY</u>

Plaintiff applied for Disability Insurance Benefits ("DIB") on May 3, 2004 alleging disability as of September 1, 2003. Upon denial of his claim, Plaintiff requested an administrative hearing, held March 28, 2007, in Mt. Pleasant, Michigan (Tr. 292). Administrative Law Judge ("ALJ") B. Lloyd Blair presided (Tr. 292). Plaintiff, represented by attorney Robert Samoray, testified, as did Vocational Expert ("VE") James Engelkes (Tr. 296-311, 311-316). On May 23, 2007, ALJ Blair issued a non-disability finding, determining that Plaintiff was capable of performing a significant number of jobs at the light exertional level (Tr. 24). On November 28, 2007, the Appeals Council denied review (Tr. 5-7).

Plaintiff filed suit in this Court on January 24, 2008.

## **BACKGROUND FACTS**

Plaintiff, 48 at the time of the administrative decision, received a GED and worked previously as a molder, machine loader, and paver (Tr. 23, 68, 313). He alleges disability as a result of depression; back, shoulder, and neck pain; and bone spurs in his feet (Tr. 53).

### **A.  Plaintiff's Testimony**

Plaintiff, a resident of Harrison, Michigan, testified that he stood 5' 6" and weighed approximately 300 pounds (Tr. 296-297). He reported quitting school after 10th grade, but later received a GED (Tr. 297). He testified that he last worked as a self-employed appliance repairman, adding that he had also held various positions requiring him to lift up to 100 pounds (Tr. 297-298). Plaintiff, left handed, denied reading or writing difficulties (Tr. 298).

Plaintiff stated that he  supported himself with his wife's Social Security payments (Tr. 299). He alleged disability as a result of high blood pressure, diabetes, heart disease, degenerative problems of the spine and neck, nerve damage in his legs, and lung disease (Tr. 299-300). He stated that he had torn both rotator cuffs, adding that his physicians recommended physical therapy prior to considering surgery (Tr. 300). He reported improvement of his condition following cervical spine surgery in the prior year, but alleged that his lower back problems were inoperable (Tr. 301). Plaintiff, also reporting physical therapy did not improve his back condition, denied steroid injections, but testified that hot baths and medication relieved his discomfort (Tr. 301-302). He also reported nerve damage of the hips and legs, acknowledging that his weight exacerbated the condition (Tr. 302). Plaintiff testified that he had not been placed on a weight loss program, alleging that in the course of a typical day, he would consume only three cups of coffee and a sandwich

(Tr. 303).

Plaintiff reported that in the prior year, he once sought emergency treatment after experiencing chest pains (Tr. 304). He testified that he took blood pressure and cholesterol medication, Requip for nerve damage, and medication for depression (Tr. 304).

Plaintiff, testifying that he lived in a single-family home with his wife and two teenage children, denied cooking, washing dishes, laundry chores, vacuuming, grocery shopping, yard work, climbing stairs, bending, current hobbies, or attending his children's school events (Tr. 305). Plaintiff testified that he generally arose at 9:00 a.m. and retired at 8:00 p.m., spending his day at the kitchen table talking to his wife (Tr. 306). Plaintiff alleged that he was unable to lift more than 10 pounds and could squat only with difficulty (Tr. 306). He reported that he was unable to stand for more than 15 minutes or sit for more than 30, reporting further that he could walk for a maximum of 20 feet (Tr. 307).

Plaintiff testified that he was depressed by his inability to participate in recreational activities with his children, adding that he regularly experienced crying spells (Tr. 308-309). He reported attempting suicide by taking an overdose of Vicodin in combination with alcohol after a physician criticized his weight (Tr. 308). Plaintiff alleged that breathing problems resulting from obesity required him to recline for most of his waking hours[1] (Tr. 310). He attributed his 2004 income of $2,300 to a "sign on" bonus issued for work performed prior to the onset of disability (Tr. 310).

### B. Medical Records

### 1. Treating Sources

In January, 2003, M. Carmen Cudiamat M.D. examined Plaintiff, observing a limited

---

[1]This statement contrasts his earlier testimony that he spent most of the day sitting at the kitchen table (Tr. 306).

range of trunk motion as a result of obesity (Tr. 140). Dr. Cudiamat advised Plaintiff to stop smoking (Tr. 141). In February, 2003, EMG testing showed the presence of Carpel Tunnel Syndrome ("CTS") of the left wrist as well as cervical radiculopathy (Tr. 167). The following month, imaging studies of the lumbosacral spine showed mild degenerative disc disease at L3-L4 to L5-S1 (Tr. 166). Also in March, 2003, an ultrasound of the neck showed a normal thyroid gland (Tr. 165). In April, 2003, an MRI of the lumbosacral spine was normal (Tr. 163). The same month, Dr. Cudiamat, observing that Plaintiff's thyroid tests were normal, advised against physical therapy for back pain (Tr. 133). In June, 2003, Plaintiff sought emergency treatment for right shoulder and neck pain, receiving a prescription for Vicodin (Tr. 97, 131). Imaging studies of the shoulder and neck showed degenerative changes but otherwise normal results (Tr. 101, 110). The same month, a tomography scan of the chest also showed normal results (Tr. 161).

In December, 2003, Plaintiff reported lung and upper abdominal pain, receiving a diagnosis of "pneumonia/bronchitis" (Tr. 116-117). Plaintiff was prescribed Bextra (Tr. 118). The same month, imaging studies of the heart showed a slightly enlarged left ventricle (Tr. 119). In February, 2004, Plaintiff was diagnosed with sleep apnea (Tr. 120). The same month, imaging studies of the right ribs showed normal results (Tr. 158-159). In March, 2004, a CT scan of the abdomen and pelvis following complaints of pain showed unremarkable results (Tr. 156). The same month, Cesar P. Udani, M.D., noting that Plaintiff exhibited signs of depression, prescribed Prozac (Tr. 126). In May, 2004, Plaintiff underwent a stress test after experiencing shortness of breath and chest pains (Tr. 155). Rowena E. Achin, M.D., noting that Plaintiff weighed 308 pounds and continued to smoke, observed that his "[e]xercise tolerance for age [was] very poor" with an ejection fraction of only 59 percent (Tr. 154-155).

In June, 2004, Dr. Robert A. Genovese M.D. performed a heart catheterization resulting in normal findings (Tr. 170). October, 2004 notes from a "mental status" examination indicate that Plaintiff had attempted suicide 15 years prior to the examination but was not a danger to others (Tr. 287). Plaintiff exhibited slowed speech and a depressed and anxious affect (Tr. 287). Plaintiff reported depression but denied suicidal ideation (Tr. 280). Plaintiff was assigned a GAF of 55[2] (Tr. 283).

In December, 2004, nerve conduction studies showed "perfectly normal" results with the exception of "ulnar neuropathy accross the elbow" (Tr. 242). Alexander Iwanow, M.D. found "no evidence consistent with [CTS]" (Tr. 242). The same month, Cheryl Loubert, M.D. performed an initial examination of Plaintiff noting COPD, hypertension, and low back pain (Tr. 233). In February, 2005, Dr. Loubert noted that Plaintiff had "no inclination" to quit smoking (Tr. 228). In May, 2005, an MRI of the cervical spine showed moderate disc protrusion at C4-C5 and C6-C7 (Tr. 259). In July, 2005, Plaintiff underwent a anterior cervical diskectomy at C4-5 without complications (Tr. 245). A stress test performed in February, 2006 showed an ejection fraction of 61 percent (Tr. 237). The same month, Dr. Loubert observed that Plaintiff experienced ongoing sleep apnea and shoulder pain (Tr. 223). In April, 2006, Plaintiff complained of leg numbness (Tr. 264-265). Meihui Ma, M.D. Ph.D. diagnosed Plaintiff with restless leg syndrome as well as leg numbness related to obesity (Tr. 265). In December, 2006, Carrie Nicholson, M.D. examined Plaintiff, prescribing Effexor XR for symptoms of depression and advising him to continue using a steroid inhaler along with albuterol (Tr. 270). Dr. Nicholson's January, 2007 treating notes state that Plaintiff

---

[2] GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR* ) (4th ed.2000).

"was well appearing and in no acute distress" (Tr. 268).

## 2. Consultive and Non-Examining Sources

In July, 2004, Mark Deskovitz, MA, LLP performed a consultive psychological examination of Plaintiff on behalf of the SSA (Tr. 179-182).  Plaintiff reported that he took Prozac for depression resulting from physical health problems, but denied counseling (Tr. 179).  Plaintiff, married twice with six children, reported further that he had a good relationship with his friends, children, and current wife (Tr. 179).  Dr. Deskovitz observed that Plaintiff was in contact with reality with normal posture, gait and speech (Tr. 180). Deskovitz assigned Plaintiff a GAF of 50[3] (Tr. 182).

The following month, a Mental Residual Functional Capacity Assessment found that Plaintiff experienced *moderate* difficulty in understanding, remembering, and carrying out detailed instructions (Tr. 183).  The Assessment found further that Plaintiff's ability to concentrate for extended periods, respond appropriately to changes in the work setting, and interact appropriately with the general public was also moderately limited, but found otherwise unlimited mental functioning (Tr. 183-185).  The Assessment concluded that Plaintiff was capable of unskilled work (Tr. 185).  The same day, a Psychiatric Review Technique ("PRT"), noting that Plaintiff experienced depression, found that he experienced moderate difficulties maintaining social functioning and concentration, persistence, or pace (Tr. 187, 190, 197).

Also in August, 2004, Plaintiff underwent a consultive physical examination,

---

[3]

A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision*, 34 (*DSM-IV-TR* ) (4th ed.2000).

reporting emphysema, heart problems, chronic obstructive pulmonary disease, hypertension, CTS, and obstructive sleep apnea (Tr. 201). Bret Bielawski, D.O. noted that Plaintiff smoked a half pack of cigarettes daily and weighed 295 pounds (Tr. 202). Plaintiff displayed normal motor strength and muscle tone but was unable to squat or "walk heels and toes" (Tr. 202). Dr. Bielawski deemed Plaintiff's emphysema "moderate to severe" (Tr. 203).

In September, 2004, a Physical Residual Functional Capacity Assessment determined that Plaintiff could lift 20 pounds occasionally, 10 pounds frequently; stand, walk, or sit for six hours in an eight-hour workday; and an unlimited ability to push or pull (Tr. 207). The Assessment found further that Plaintiff was precluded from all ladder, rope, and scaffold climbing and limited to *occasional* ramp and stair climbing, finding however that Plaintiff was capable of *frequent* (as opposed to *constant*) balancing, stooping, kneeling, crouching, and crawling (Tr. 208). The Assessment limited Plaintiff to frequent handling and fingering (Tr. 209). His visual and communicative abilities were deemed unlimited (Tr. 209-210). Plaintiff's environmental limitations consisted of avoidance of even moderate exposure to vibration, fumes, odors, dusts, gases, and poor ventilation (Tr. 210). The assessor, B. D. Choi, M.D. concluded that Plaintiff's allegations of limitations were only "partially credible" (Tr. 211).


### 3.  Material Submitted Subsequent to the Administrative Decision

On July 12, 2007, Carrie Nicholson, M.D. issued a statement, noting Plaintiff's "chronic disabling back pain with radiating symptoms down his legs. . ." (Tr. 290). Dr. Nicholson opined that as a result of degenerative disc disease, Plaintiff experienced "significant pain" in "leaning forward, leaning backwards, and sitting and standing for a prolonged period of time" (Tr. 290). Dr. Nicholson noted that Plaintiff had recently

developed adhesive capsulitis of the shoulder, causing discomfort and ROM limitations (Tr. 290).

### C. VE Testimony

VE James R. Engelkes, stating that his testimony was consistent with the information in the *Dictionary of Occupational Titles* ("DOT"), classified Plaintiff's past jobs as a molder and machine loader as heavy and unskilled, and work as an appliance repairman as heavy and semi-skilled[4] (Tr. 313). The ALJ posed the following hypothetical question:

> "Assume a hypothetical individual who can meet the demands of light work. should never use ladders, scaffolds, or ropes, and only occasionally use ramps, or stairs. Should avoid even moderate exposure to vibrations. Should only occasionally reach overhead. Infrequently, but not . . . of handling and finger[5]. Should have, only . . . simple unskilled work with an SVP of one or two. Should have work only involving one, two or three-step instructions. Should have no jobs involving concentration or detail or precision task or multiple and simultaneous task. Could have no jobs requiring the individual to calculate, compute, problem solve or reason. Should have works that would require only brief or a superficial contact with the general public and routine work with no changes or adaptations in the work settings or duties more than once per month."

(Tr. 263). The VE found that the hypothetical individual would be unable to perform Plaintiff's past relevant work (Tr. 314). The VE testified, taking into account Plaintiff's "age, education and work history," that the hypothetical individual could nonetheless perform the job of general office clerk (8,000 positions in the lower peninsula of Michigan), collator operator (5,000), and sorter/folder positions in the cleaning industry (3,000) (Tr. 314-315).

---

[4] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

[5] Later testimony shows that this limitation should indicate frequent, but not constant handling and fingering (Tr. 316).

The VE testified that he had drawn his job findings from the DOT, Bureau of Census publications, *County and Business Patterns for the State of Michigan*, the *Occupational Outlook Handbook*, employer surveys, and his own professional experience (Tr. 315). The VE found that if Plaintiff allegations of limitation were completely credited, all full-time work would be precluded (Tr. 315).

### D. The ALJ's Decision

Citing Plaintiff's medical records, ALJ Blair found that although Plaintiff experienced the severe impairments of "status post cervical C4/5 discectomy with anterior fusion; obesity; asthma/chronic obstructive pulmonary disease; shoulder arthritis; [and] depressed mood," none of the impairments met or equaled any impairment listed in Appendix 1, Subpart P, Regulation No.4 (Tr. 16, 20). The ALJ found that Plaintiff retained the following Residual Functional Capacity ("RFC"):

> "simple unskilled 1, 2 or 3-step instruction sedentary work with an SVP rating of 1 or 2, that: does not involve concentration or detailed/precision tasks or multiple/simultaneous tasks; does not require reading, computing, calculating problem solving or reasoning; does not require more than brief and superficial contact with the general public; is routine in nature and does not require changes or adaptations in work settings or duties more than once per month"[6]

(Tr. 20). Adopting the VE's job numbers, the ALJ found that Plaintiff could work as a general office clerk, collator operator, and sorter/folder (Tr. 24).

The ALJ supported his determination by finding Plaintiff's allegations of limitation "not entirely credible," noting that the Plaintiff's account of his activities of daily living ("ADLs") submitted prior to the hearing showed that he continued to "prepare simple meals, drive an automobile [and] attend to family finances" (Tr. 23).

---

[6] A reading of the administrative decision and hearing transcript indicates that the ALJ intended to state that Plaintiff could perform *light* rather than *sedentary* work.

The ALJ also noted that none of Plaintiff's physicians "imposed a work preclusive limitation" on his activities (Tr. 22).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.

§423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A. Credibility

Plaintiff argues that the ALJ's credibility determination was based on an erroneous reading of the record. *Plaintiff's Brief, Docket 19* at 4-7. In particular, he contends that the credibility determination was tainted by the ALJ's failure to consider a number of his medical conditions. *Id*. at 5. Plaintiff also asserts that the ALJ's observation that he did not experience "a totally debilitating pathology" shows that ALJ applied an incorrect standard of review in finding him non-disabled. *Id*. at 5-6.

The credibility determination is guided by SSR 96-7p, which describes a two-step process for evaluating symptoms. *See Duncan v. Secretary of Health and Human Services,* 801 F.2d 847, 853 (6th Cir. 1986). "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment . . . that can be shown by medically acceptable clinical and laboratory diagnostic

techniques." Second, SSR 96-7p mandates that "the adjudicator must evaluate the intensity, persistence, and limited effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." *Id.*

C.F.R. 404.1529(c)(3), 416.929(c)(3) lists the factors to be considered in evaluating whether a claimant's symptoms are disabling:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

Plaintiff, apparently conceding that the credibility determination was procedurally correct, argues that the administrative opinion was "short on analyzing related medical evidence." *Plaintiff's Brief* at 4. I disagree. Plaintiff faults the ALJ for failing to include the diagnoses of degenerative changes of the cervical spine, reflux disease, hypertension, plantar faciitis, chronic lower back pain, sleep apnea, and CTS among his Step Two "severe" impairments. *Id.* at 5. However, Plaintiff has made no showing that degenerative changes at C5-6/C6-7, reflux disease, hypertension, or plantar faciitis would create even *de minimus* workplace limitations. *See Farris v. Secretary of HHS*, 773 F.2d 85, 90 (6th Cir. 1985). Further, Plaintiff himself acknowledges that the administrative opinion discussed his allegations of lower back pain and sleep apnea. *Plaintiff's Brief* at 5 (*citing* Tr. 17, 19). Finally, Plaintiff's claim that he experienced CTS is disputed by Dr. Iwanow's December, 2004 studies showing "no evidence consistent with [CTS]" (Tr. 242).

Even assuming a number of these conditions were "severe," and should have been

included at Step Two, the omission of an impairment at Step Two where substantial evidence supports the presence of a work-related limitation does not by itself require remand. *See Street v. Barnhart* 340 F.Supp.2d 1289 (2004), 1293 -1294 (M.D.Ala.,2004); *See also Moran v. Commissioner of Social Security* 2003 WL 22002432, *2 (E.D.Mich.,2003)(Lawson, J.); *Leeper v. Sullivan* 1990 WL 77874, 2 (N.D.Ill.1990). As discussed more fully, *infra,* the ALJ addressed Plaintiff's complaints of lower back pain and extremity limitations by including a preclusion on ladder, scaffold, or rope use as well as jobs requiring constant fingering and handling (Tr. 263).

Plaintiff also faults the ALJ for "ignor[ing]" Dr. Deskowitz's consultive examination findings while adopting the conclusions of a non-examining source. *Plaintiff's Brief* at 6. However, to the contrary, the ALJ spent the better part of a paragraph noting that Dr. Deskowitz's finding of a GAF score of 50 stood at odds with the psychologist's own examination notes suggesting moderate limitations (Tr. 23). Plaintiff also states (incorrectly) that Dr. Bielawski's findings were ignored. *Id.* In fact, the ALJ thoroughly discussed his reasons for rejecting the consultive physician's findings regarding manipulative limitations, citing Dr. Iwanow's December, 2004 conclusion that Plaintiff did not experience CTS (Tr. 23 *citing* 242). The ALJ also noted that Plaintiff's claim of extreme limitation was contradicted by his admission that he was able to "prepare simple meals," drive, and "attend to family finances" (Tr. 23 *citing* 62-64). The ALJ permissibly observed that Plaintiff's allegations of breathing difficulties were undermined by the fact that he continued to smoke (Tr. 19, 22). *See Sias v. Secretary of Health and Human Services*, 861 F.2d 475, 480 (6th Cir. 1988).

Finally, Plaintiff criticizes the ALJ for noting that Plaintiff did not experience "a totally debilitating pathology," "profound stenosis," or "meaningful degenerative or erosive

changes," arguing that in doing so, the ALJ applied the wrong legal standard in finding him non-disabled. *Plaintiff's Brief* at 5 (*citing* Tr. 22). Plaintiff offers no support for the theory that these findings were used as the "legal standard" in determining non-disability. An "in context" reading of the these comments, found within the credibility analysis, indicates that the ALJ was simply observing that Plaintiff's allegations of overwhelming limitation stood at odds with objective tests and treatment notes (Tr. 22). Because Plaintiff has failed to show that the ALJ performed an inadequate credibility analysis or applied the wrong legal standard, the deference generally accorded the administrative credibility finding is appropriate here. *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1234 (6ᵗʰ Cir. 1993); *Richardson, supra,* 402 U.S. at 401, 1427.

### B. The Hypothetical Question

Plaintiff, building on the argument that the ALJ improperly discounted his allegations of disability, contends that hypothetical restrictions posed to the VE did not reflect his true degree of limitation. *Plaintiff's Brief* at 8. Citing *Walker v. Secretary of Health and Human Services*, 980 F2d 1066 (6ᵗʰ Cir. 1992), Plaintiff argues that the hypothetical question's deficiencies invalidate the VE's finding that he could perform a variety of unskilled light work. *Id*. (*citing Edwards v. Barnhart*, 383 F. Supp. 2d 920 (E. D. Mich. 2005)(Friedman, J.)).

A hypothetical question constitutes substantial evidence only if it accurately portrays the individual's physical and mental impairments. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). However, although the hypothetical question should account for a claimant's full degree of limitation, the ALJ is not required to list all of a claimant's conditions verbatim. *Webb v. Commissioner of Social Sec.,* 368 F.3d 629, 632 (6th Cir. 2004). Further, "the ALJ is not obliged to incorporate unsubstantiated complaints

into his hypotheticals." *Stanley v. Secretary of Health and Human Services,* 39 F.3d 115,118-119 (6th Cir.1994); *Hardaway v. Secretary of Health & Human Servs.,* 823 F.2d 922, 927-28 (6th Cir.1987).

Plaintiff argues once again that the ALJ overlooked the diagnoses of degenerative changes of the cervical spine, reflux disease, hypertension, plantar faciitis, chronic lower back pain, sleep apnea, and CTS. *Plaintiff's Brief* at 8. First, Plaintiff's apparent argument that the ALJ was required to list all of his conditions in the hypothetical question has been rejected by the Sixth Circuit. *Webb,supra,* at 632. Although the ALJ did not list Plaintiff's conditions verbatim or employ otherwise"talismatic" language in the question, this was not required, provided that the question reflected Plaintiff relevant limitations. *Smith v. Halter,* 307 F.3d 377, 379 (6th Cir. 2001).

Substantial evidence supports the ALJ's choice of hypothetical limitations. Plaintiff makes no showing that acid reflux, for example, created work-related limitations. Although Plaintiff also faults the ALJ for failing to consider his degenerative changes of the cervical spine, the hypothetical limitations precluding the use of ladders, scaffolds, and ropes reflect Plaintiff's legitimate limitations as a result of back pain as well as plantar faciitis (spurs). (Tr. 263). Likewise, the ALJ's preclusion on "jobs requiring the individual to calculate, compute, problem solve or reason" adequately reflect Plaintiff's alleged concentrational problems as a result of sleep apnea (Tr. 263). Despite evidence refuting Plaintiff's allegations of CTS, the ALJ also included fingering and handling limitations in the hypothetical question (Tr. 242, 263).

### C. Dr. Nicholson's July 12, 2007 Opinion Letter

Plaintiff's argument that the ALJ erred in discounting his allegations of limitation (*see* Section **A.**, *supra*) includes a citation to Dr. Nicholson's July 12, 2007 finding that he

suffers from "chronic disabling back pain radiating down his legs."[7] *Plaintiff's Brief* at 5 (*citing* Tr. 290). Because he requests the consideration of material submitted after the ALJ's May 23, 2007 decision, this argument is construed as a request for a "Sentence Six" remand. 42 U.S.C. § 405(g). Sentence Six of 42 U.S.C.A. § 405 states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . ."[8]

In *Melkonyan v. Sullivan,* 501 U.S. 89, 97-99, 111 S.Ct. 2157, 2163, 115 L.Ed.2d 78 (1991), the Court held that a Sentence Six remand (in which the district court retains jurisdiction) "does not attach to any substantive ruling but merely remands the matter for further review in light of newly discovered evidence which is to be considered by the administrative law judge and therefore does not constitute a 'judgment' from which appeal can be taken." The court does not grant summary judgment, but merely remands for further review. *Id.* Accordingly, the court "may consider the additional evidence only for purposes of determining whether remand is appropriate under the sixth sentence of 42 U.S.C. §405(g)." *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir. 1993). Where the Appeals Council denies a claimant's request for a review of his application based on new material, "the district court cannot consider that new evidence in deciding whether to uphold, modify, or

---

[7]

The fact that Plaintiff has not requested a Sentence Six remand does not prevent the Court from granting such relief *sua sponte.* *Street v. Commissioner of Social Security,* 390 F.Supp.2d 630, 640 (E.D.Mich.2005). However, a review of the newer records indicates that a sentence six remand is not warranted.

[8]In contrast, Plaintiff's two main arguments for remand, based on the credibility determination and hypothetical question are made under Sentence Four, 42 U.S.C. § 405(g)("[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing").

reverse the ALJ's decision." *Cotton* 2 F.3d at 695-96.

As to materiality, Plaintiff cannot show that Dr. Nicholson's letter would have altered the administrative decision. For the sake of argument, the Court will allow that the physician's statement that Plaintiff experienced "disabling back pain" qualifies as an opinion of disability. However, Dr. Nicholson's letter refers to Plaintiff's condition in the present tense, giving no indication that Plaintiff became disabled prior to the May 23, 2007 opinion. *See Sizemore v. Secretary of Health & Human Services,* 865 F.2d 709, 712 (6th Cir. 1988) (A claimant wishing to establish that he experienced a deterioration of his condition or the onset of another illness subsequent to the ALJ's decision must initiate a new claim for benefits alleging an onset date consistent with the deterioration). Although, of course, Plaintiff submitted Dr. Nicholson's opinion in support of his present application, the fact that Dr. Nicholson began treating him only six months before the administrative decision (and saw him only three times) also supports the finding that her July 12, 2007 opinion is immaterial to the claim. Further, Plaintiff has failed to provide "good cause" for submitting the physician's opinion over three months subsequent to his March, 2007 administrative hearing.

In closing, I note that the the non-disability determination is not intended to trivialize Plaintiff's legitimate impairments. The fact that I might find differently upon *de novo* review is of no import. Based on a review of this record as a whole, the ALJ's decision is clearly within the "zone of choice" accorded to the fact-finder at the administrative hearing level pursuant to *Mullen v. Bowen*, *supra*, and should not be disturbed by this Court.

## CONCLUSION

For these reasons, I recommend that Plaintiff's Motion for Summary Judgment be DENIED and Defendant's Motion for Summary Judgment GRANTED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


s/R. Steven Whalen
UNITED STATES MAGISTRATE JUDGE

Dated: October 31, 2008

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on October 31, 2008.


s/Susan Jefferson
Case Manager
